The first case today is 141712, United States v. DeLeon Reyes-Rivera. Good morning, Your Honors. Happy New Year. My name is Michael Hasse, and I'm appearing on behalf of DeLeon Reyes-Rivera. I'd like to reserve five minutes for rebuttal argument at the end, if that need be. Yes, you may have it. And I welcome everybody here, including my opponent here, Mr. U.S. Attorney from Puerto Rico. I just wish you had brought some warm weather with us today. We do, too. But anyway, we're asking for review of the 242-month sentence that was imposed on DeLeon Reyes-Rivera. On count two was imposed a 60-month sentence, and on count three, a 242-month term on the bank fraud conviction. The 60-month term was on a conspiracy to commit wire fraud. And the sentence imposed upon Mr. Reyes-Rivera was a 242-month term, taking 20 years and two months. And his claim is that it's an excessive sentence. It's an unwarranted disparity amongst essentially his co-defendant and other cases from within and without the district. And the sentence is really – Do I understand you correctly that you're saying it's excessive in its own terms? Yes. And it's excessive because his brother, the co-defendant, got a lesser sentence? Got a lesser sentence. And I know there's a difference in the involvement. The brother was an attorney, and DeLeon was not an attorney. There are some certain – But your client led this scheme, pretty much. He was a person who came to the table with a good deal of knowledge about what he was doing. And wasn't he clearly the architect? The brother was not? He wasn't seen as inadmitted to being the leadership of the scheme. He accepted a two-level enhancement for that. It pretty much was a run-of-the-mill Ponzi scheme, though, and it wasn't like his involvement was hidden from the brother. They were both willing participants and knew what was going on, had access to the funds and bank accounts of the corporation. So it wasn't like the brother was an unwilling participant and only set up the corporation or something like that. They were banding together and recruiting investors and knew everything that was going on as far as the scheme went. And the escalated sentence, what was unique in this sentencing hearing, as you read through the transcript, is the sentencing hearing was so heavily weighted in terms of the victim impact and the victim's input. There was very much vocal input. It did not end at the end of the sentencing hearing. At the end of the sentencing hearing, actually, the restitution throughout the sentencing hearing was sort of a moving target. It started out as a figure of about $20 million, and then we found out the money was returned back to the investors, so it was really close to the $7 million. But in terms of what the end result was, the sentencing, I think that the $20 million sort of prevailed, and the input from the victims being so vocal and not even being finished by the end of the hearing, the court was compelled to levy a term that was more necessary and unreasonable under the circumstances in light of others, which might have been a complete proceeding at the time that the proceeding was made. Can I ask you about the abuse of trust enhancement and what your argument is for why that doesn't apply? The abuse of trust enhancement, I would indicate, would be really relegated to somebody who was stealing something when they were given a position of trust, somebody that was a bank president, somebody that was a judge that was giving out favors in terms of payments. I mean, that person would have a position of trust. And the application talks about an investment broker. An investment broker. And how is your client different than an investment broker? Well, he wasn't an investment broker. He was pretty much a jack-leg Ponzi schemer in the context of this case. Well, I guess what I'm asking is how is it what he did different than holding yourself out as an investment broker? Because he didn't give people the other guarantees. We were an FDIC-insured brokerage firm or things like that. It was very much private contracts, and it was a private scheme. It wasn't inviting people to be involved in investment, commercial investment opportunities that was linked to the stock market or something like that. But when you invest in anything, there's a certain degree of trust. And he built around himself that degree of trust with people so that they thought that what they were doing was making a reasonable investment, which was safe. Certainly any Ponzi scheme, too, would be. I mean, people aren't going to give you their money if you're not going to do it. So your argument is that in order for the abuse of trust to apply, it's not enough to be holding yourself out as a company you can invest in and be dishonest. Instead, you have to hold yourself out as somebody who has a kind of fiduciary obligation to the person who's investing? You can't be a panhandler. You have to be an employee of the bank in a sense. The person that's getting money and they're doing their own little scheme outside and grabbing money from people without that stamp of approval from some trustworthy organization shouldn't apply. Do you have any authority that supports how you're reading the abuse of trust? Excuse me? Do you have any precedent that we could rely on that supports how you're reading the abuse of trust enhancement? Well, he wasn't licensed in terms of a Ponzi scheme. The skills he had acquired while he was – he had a security license. No, I don't – in fact, I mean – I don't have it.  It's on the site. Abuse of trust in 3D1.3, endorsing and obtaining trust of people in the community to do investments on their behalf would be enough unless they have some position. Counsel, send us a 28-J letter after the oral argument. Okay. Yes. Within one week, copy to your brother that includes any authority on which this – Abuse of trust in his name. Right. Very good. Thank you very much. Thank you. Good morning, Your Honors. Good morning. Nelson Melisos on behalf of the United States. Happy New Year to everyone. I would like first to address the disparity issue, which was initially commented by Brother Counsel. Certainly, the position of Codependent Jeffrey, who was Defendant's brother, is totally different from him. Defendant was the architect of this scheme. And I would refer the Court to the PSR at page 36, where the Defendant himself marks the contours of his brother's participation. He says, he was the one who influenced his brother to engage in the fraud. His brother followed his instructions. Defendant was the one who made all business decisions. His brother consulted with him prior to making a contract for bringing in new investors. And Defendant further stated that he never explained his brother about his business. So I think that marks greatly a difference between both participants. Where is this? Where in the record is this? We have this by Defendant's own admission in the PSR. In the PSR. At page 36, concretely. Okay. I would say that the abuse of position of trust, which was also addressed by Brother Counsel at the request of the Court, was an enhancement that was promptly imposed by the Court. And the Court clarified that this enhancement was proper because Defendant maintained a position of trust, which he actually used in order to foster the scheme. I would like to call this Court's attention to the case of United States v. Pacheco-Martinez, which is a recent decision from this Court offered by Judge Lynch. 791 Federal 3rd, 171. Pages 178 and 180, which is cited in our brief. And in addition to the fact that the Defendant had a position of trust, that decision makes it clear that a particular relationship of friendship can qualify in order to impose this enhancement. And the record so sustains. The PSR at page 36 clarifies that the Defendant accepted that many of his investors were relatives and friends. And also, at the sentencing hearing, the Defendant admitted during his adjudication that among his clients were family and friends. I would also call to the commentary of the explanatory application notes in the abuse of this position of trust, 3D1.3, that it certainly applies in this case because it concretely states that the enhancement applies in the case of a Defendant who perpetrates a financial fraud by leading an investor to believe that a Defendant is in a legitimate investment broker. That belief was worsened. Does the record support the finding that he was performing the role of an investment broker here? I would say so. I would say so. And if the Court wants, I can add additional foundations for that. But that was basically what he was doing. He proposed himself to people as a broker who would get for them investments who were free of risk, high yield, and short term. That's basically putting down what the scheme was. The District Court didn't rely on the family and friends theory for abuse of trust. Excuse me? The District Court didn't rely on the friends and family basis for finding an abuse of trust enhancement. No, but it's clear that the record supports that and it's not contrary to the legal authority. I just reread the sentencing transcript this morning in which the judge does find abuse of trust. But she also says she had previously found that he was in a position of trust. What was that a reference to? I understand that he was in a position of trust because of the very nature of the scheme. Yes, but when did the District Court make the earlier finding? To what is she referring? I don't recall that. I do recall it's in the sentencing transcript, but I don't recall at what procedural stage was that finding made before. Okay, thank you. I would say that in this case the court exercised its authority in imposing the sentence it did, complying with what is the legal norm that the court is not bound by stipulations. It's not bound by the agreement. It's not bound even by the information or findings in the pre-sentence report. But the court really assessed everything and made its own findings, rejecting some of the specific enhancements in the pre-sentence report and accepting and going by some of the pre-agreement. It was based on a very thorough decision by the District Court, and its variance was certainly based on the immense amount of harm done to the victims. We know that the enhancement itself was only, I think, seven months, if I'm correct, from or over the sentencing range determined by the court after she applied the enhancements, the proper enhancements in the case. I would say that there's no error in the court's findings, that the court justified everything that she did, that there's substantial support in the record for those findings, and that the sentence should be offered. If there are no further questions, I ask permission to withdraw. Thank you. You reserve five minutes. The type of Ponzi scheme that we had here was delineated as something that was pretty much a homegrown effort from DeLeon and his brother. He joined groups to promote people. He joined a speed reading group, I believe was mentioned in the transcript of the PSR. And he also had various promoters that were out there promoting his scheme. So I don't think any – he was previously had some employment in some brokerage house or something like this, but it's not clear and it's not delineated within the record of the case how any of those skills that he previously earned perhaps at a brokerage house or being involved in securities was employed by him to further this Ponzi scheme. Somebody can be involved in – Are you on the specialized knowledge or abuse of trust enhancement with this argument? Well, either. There's nothing else to show that – Well, is it – is the impression of his victims when he says he has a background as a broker, isn't that what's more important than whether he used brokerage skills? Well, they would both play a part. They would both be considered, I suppose, elements in someone's consideration whether – Well, one might be relevant to special skills but not abuse of trust. In other words, how you hold yourself out might be relevant to abuse of trust even if it didn't involve the use of that skill. Okay, he didn't use the skills and – Right, so that would suggest it's not a special skill. But our question is, is it abuse of trust if he held himself out as a broker? I don't see him promoting the scheme in such a way. That wasn't the way that the PSR in the sentencing transcript indicated that he was promoting this scheme. I'm a former Merrill Lynch guy. But it's the pitch. It's the pitch to the people. And when you do it that way and you do it in connection with your background and your training, people understand that that's part of what you're selling. And it seems to me that's classic. Well, it could be. It could be in the lingo and stuff like that that was used. But none of that is really spelled out for us in the record of the case. Did you challenge that below to the district court when it made the finding that there was an abuse of trust? Well, that was in the counsel below, but it was – Did counsel below – Yeah, it was our – Well, counsel below, as I read it, objected that there was no special skill involved. Right. But this is a different argument now that I understand you're making. Right. Which is that he didn't hold himself out as a broker. Right. But I don't see him – But that was not raised below to the district court. Right. I just don't see him holding himself out as such. So you're making the argument on appeal against a plain error standard. Right. Okay. Thank you. Thank you.